**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | |
|---|---|
| **KELLY McLEAN, on behalf of herself and all others similarly situated,** | Case No. _____ |
| Plaintiff, | |
| -v.- | CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL |
| **PRETTYLITTLETHING.COM USA INC., d/b/a PRETTYLITTLETHING,** | |
| Defendant. | |

-----------------------------------------------------------------x

Plaintiff **KELLY McLEAN** ("Plaintiff" or "Ms. McLean"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this action against **PRETTYLITTLETHING.COM USA INC., d/b/a PRETTYLITTLETHING** ("PrettyLittleThing" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.,* arising from Defendant's failure to design, construct, maintain, and operate its ecommerce website, www.prettylittlething.com, in a manner that is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff Kelly McLean is a resident of Bronx County and is permanently disabled due to Bietti's Crystalline Dystrophy, a rare inherited retinal degenerative disorder that causes progressive loss of retinal function and severe decline in visual acuity. Her treating optometrist at Bronx Eye Associates confirms that Ms. McLean now has "only minimal residual perception of light and shapes" and is "almost completely blind," with constricted visual fields, impaired night vision, and profound functional sight loss. Her

condition is permanent, irreversible, and progressive, and there are currently no curative treatments available for Bietti's Crystalline Dystrophy. Exhibit A.

2.      As a legally blind individual, Ms. McLean relies exclusively on screen-reading software and keyboard navigation to access digital content independently. Because she cannot visually interpret website content, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive elements, and screen-reader-compatible navigation. For Ms. McLean, accessible coding is not optional—it is the only means by which she can access the internet.

3.      In 2026, Ms. McLean sought to independently browse and purchase women's apparel from Defendant's website, www.prettylittlething.com—a highly interactive retail ecommerce platform operated by PrettyLittleThing.com USA Inc., a Delaware corporation incorporated on March 23, 2017, and headquartered in Los Angeles, California, which markets and sells women's clothing, accessories, shoes, and beauty products throughout the United States under the trade name "PrettyLittleThing." Ms. McLean specifically sought to browse and purchase a Floral Satin Midi Slip Dress and a Ribbed Asymmetric Bodycon Mini Dress—two of the signature fashion items displayed across the Website's dresses and new-in categories—products she was unable to independently evaluate or purchase due to pervasive accessibility barriers throughout the Website.

4.      According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and ensure full integration and equal access. The Department of Justice has repeatedly

affirmed that the ADA applies to the goods, services, and activities offered by public accommodations on the web.

5.      The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6.      Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain inaccessible form controls cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

7.      The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8.      Plaintiff brings this civil action against PrettyLittleThing.com USA Inc., d/b/a PrettyLittleThing, the operator of www.prettylittlething.com, for its failure to design,

construct, maintain, and operate its highly interactive retail ecommerce platform in a manner that is fully accessible to blind and visually impaired individuals. Defendant's denial of full and equal access to its Website—and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the ADA.

9.    Ms. McLean first became aware of www.prettylittlething.com  through word of mouth from friends and family members who had shopped on the site and praised it as one of the most trend-forward and value-conscious women's fashion retailers available online—a platform known for offering runway-inspired styles, including satin slip dresses, bodycon silhouettes, and occasion-wear pieces, at prices accessible to a broad range of consumers. PrettyLittleThing is one of the largest and most prominently marketed online women's fashion retailers in the United States, maintaining an extensive and continuously refreshed catalog across dozens of categories—dresses, tops, shoes, accessories, swimwear, and beauty—and aggressively advertises to a nationwide consumer base through social media, influencer partnerships, and digital promotions. For Ms. McLean, who as a legally blind individual cannot independently browse a physical retail store or evaluate merchandise on a sales floor, the ability to independently access an online fashion retailer of PrettyLittleThing's breadth and price point represents exactly the kind of equal participation in the digital marketplace that the ADA was designed to guarantee. She specifically sought a Floral Satin Midi Slip Dress because satin midi slip dresses are among PrettyLittleThing's signature and most-marketed product types—a versatile occasion-wear piece that she intended to purchase for personal use at an upcoming social event. She also sought a Ribbed Asymmetric Bodycon Mini Dress, a form-fitting style featured prominently in PrettyLittleThing's new-in and going-out categories that she had been

specifically recommended by a friend who had purchased the same style from Defendant's Website. Because Ms. McLean cannot independently inspect, compare, or evaluate clothing in a physical setting, she relies entirely on the product descriptions, imagery, sizing guides, and interactive features of an accessible website to make informed purchasing decisions; she chose to wait for the Website to be remediated rather than abandon her intent to shop at PrettyLittleThing, because PrettyLittleThing's combination of style, selection, and price point is not replicated by any other retailer she has been directed to, and because she is entitled under the law to access this particular marketplace on equal terms with sighted consumers—not to be forced to patronize a different, potentially inferior, alternative.

10.    On January 14, 2026, March 3, 2026, and May 12, 2026, Plaintiff attempted to access Defendant's Website using screen-reader technology to browse and purchase a Floral Satin Midi Slip Dress and a Ribbed Asymmetric Bodycon Mini Dress—two items she sought to review in detail, including product descriptions, available sizes, color options, pricing, and shipping terms, before completing a purchase.

11.    Despite multiple attempts across these three dates, Plaintiff was unable to independently complete her objectives due to pervasive access barriers. SortSite automated accessibility audits of www.prettylittlething.com,  scanning 2,427 pages and files across the Website—a scan that was halted partway through, with 1,404 additional pages remaining unchecked—identified accessibility violations across 2,250 pages of the site, including Level A WCAG 2.1 failures—the most severe category—on the homepage, product pages, category pages, account and login pages, and informational pages, confirming systemic inaccessibility throughout the Website Plaintiff attempted to navigate.

12.     The accessibility barriers were systemic and not limited to isolated pages. The SortSite reports documented failures across product images affecting 1,222 pages, form controls affecting 1,222 pages, heading structure affecting 215 pages, and interactive components across virtually the entire Website, confirming that Defendant's Website is not coded in a manner compatible with screen-reader technology and denies blind users equal access to the goods and services offered. Exhibit B.

13.     Defendant operates a retail ecommerce platform through which consumers can browse women's clothing, shoes, accessories, and beauty products, review detailed product descriptions and imagery, select size and color options, and purchase items directly online. Plaintiff specifically sought to independently evaluate and purchase fashion items from Defendant's Website—the same categories and products that are prominently marketed across the platform—and was denied that opportunity entirely by Defendant's failure to make its Website accessible.

14.     Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.prettylittlething.com becomes and remains accessible to blind and visually impaired users. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

**JURISDICTION & VENUE**

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

16.     This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

17.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County, accessed Defendant's Website, www.prettylittlething.com, from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where a plaintiff encounters website accessibility barriers. See *Velazquez v. Don Roberto Jewelers, Inc.,* No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

18.     Defendant is subject to personal jurisdiction in this District because it is incorporated under the laws of the State of Delaware and purposefully directs substantial business activities toward New York consumers through its highly interactive ecommerce Website, www.prettylittlething.com, which allows users to browse women's apparel, accessories, shoes, and beauty products; select sizes, colors, and quantities; create accounts; and complete purchases for delivery to New York addresses. Defendant ships products directly to New York residents, markets to New York consumers through digital advertising and promotional campaigns, and derives substantial revenue from sales within this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See *Andrews v.*

*Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

19.    The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

20.    This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**THE PARTIES**

21.    Plaintiff Kelly McLean is, and at all relevant times was, a resident of Bronx County, New York, residing at 211 East 203rd Street, Apt. 2E, Bronx, New York 10458. Ms. McLean is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by her treating optometrist, Viren Patel, O.D., of Bronx Eye Associates, 665 Pelham Parkway North, Bronx, New York 10467, by letter dated January 5, 2026, Ms. McLean has been diagnosed with Bietti's Crystalline Dystrophy, a rare inherited retinal degenerative disorder that has caused progressive retinal deterioration, constricted visual fields, impaired night vision, and profound functional sight loss. Dr. Patel further confirms that Ms. McLean is now "almost completely blind, with only minimal residual perception of light and shapes," and that her condition is permanent, irreversible, and progressive.

22.     Plaintiff is a proficient user of screen-reader technology, including NVDA (NonVisual Desktop Access), and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. McLean depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

23.     For Ms. McLean, accessible online shopping is essential to her independence. As a legally blind consumer, she cannot visually browse retail stores, inspect merchandise on display, or evaluate fashion items in person without assistance. She therefore relies heavily on accessible ecommerce websites to research, evaluate, and purchase clothing and accessories. Ms. McLean was specifically drawn to www.prettylittlething.com as a source for fashionable women's apparel—in particular, a Floral Satin Midi Slip Dress and a Ribbed Asymmetric Bodycon Mini Dress—items she intended to purchase for personal use after being directed to the site by friends and family who regularly patronize PrettyLittleThing and recommended it for its trend-forward styles and competitive pricing. When websites lack proper alternative text for product images, labeled form controls, accessible navigation, and screen-reader-compatible interactive elements, Ms. McLean is unable to obtain the same product information available to sighted shoppers and is denied equal access to the digital marketplace.

24.     Upon information and belief, PrettyLittleThing.com USA Inc. ("PrettyLittleThing" or "Defendant") is a Delaware corporation incorporated on March 23, 2017, with its registered agent at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 (The Corporation Trust Company), and its principal place of

business located in Los Angeles, California. Defendant is a wholly owned subsidiary of PrettyLittleThing.com Limited, a United Kingdom private limited company, which is in turn a subsidiary of Debenhams Group PLC (formerly Boohoo Group PLC). Defendant owns, operates, and controls the commercial retail ecommerce Website www.prettylittlething.com (the "Website"), through which it markets, displays, and sells women's clothing, accessories, shoes, and beauty products directly to consumers throughout the United States, including residents of New York. Defendant derives substantial revenue from interstate commerce and transacts business within this District by offering its products for direct online purchase and shipment to New York consumers.

## STATEMENT OF FACTS

Plaintiff's Attempts to Access Defendant's Website

25.     On January 14, 2026, March 3, 2026, and May 12, 2026, Plaintiff Kelly McLean attempted on three separate occasions to access Defendant's retail ecommerce Website, www.prettylittlething.com, using the NVDA screen reader on her home computer in Bronx County. Because Ms. McLean is "almost completely blind, with only minimal residual perception of light and shapes," she cannot visually browse physical retail stores, examine merchandise on display, or evaluate fashion items in person. As a result, she relies entirely on accessible ecommerce websites to research, compare, and purchase clothing and accessories independently. Plaintiff visited Defendant's Website for the specific purpose of browsing and purchasing women's apparel from one of the most widely marketed online fashion platforms in the United States—a site recommended to her by friends and family who are regular patrons of PrettyLittleThing—but was unable to do so due to pervasive accessibility barriers.

26.     Plaintiff specifically attempted to research and purchase two products: a Floral Satin Midi Slip Dress and a Ribbed Asymmetric Bodycon Mini Dress—both prominently featured across Defendant's homepage, new-in categories, and product listing pages. The Floral Satin Midi Slip Dress is among PrettyLittleThing's most prominently marketed offerings: a mid-length silhouette in a floral-printed satin fabric, spanning the dresses and occasion-wear categories and available in multiple sizes and color variations. Plaintiff intended to wear the dress to an upcoming social event and was drawn to PrettyLittleThing specifically because friends who had purchased similar items from the Website praised both the quality and the price point. The Ribbed Asymmetric Bodycon Mini Dress is a form-fitting ribbed-knit dress with an asymmetric hemline, featured in PrettyLittleThing's new-in and going-out categories—a core product type displayed across dozens of the scanned product pages—which a friend had specifically recommended to Ms. McLean after purchasing the same style herself. Ms. McLean intended to evaluate each item's full product description, available sizes, color options, pricing, and shipping timeline, and to complete a purchase for personal use. Because she cannot independently inspect or compare clothing in a physical store, she relies entirely on the accessible content of an ecommerce website to make informed purchasing decisions; PrettyLittleThing's combination of trend-forward styles at accessible prices is not replicated by any other online retailer she has been directed to, and she therefore chose to wait for this Website to be remediated rather than attempt to patronize a different and potentially inferior alternative.

27.     Plaintiff attempted to review product names, descriptions, available sizes and color options, pricing, return and shipping information, and related styling suggestions.

She also attempted to use the Website's interactive controls—including category navigation, product filtering, size selection, and account and checkout functionality—to locate and evaluate each product's full range of options. However, SortSite automated accessibility audits of www.prettylittlething.com identified, among other failures, missing and meaningless alternative text on images across 1,222 pages, unlabeled HTML form controls across 1,222 pages, empty heading elements across 215 pages, absent document titles across 1,019 pages, and a CSS animation running for thirty seconds without any mechanism to pause or stop it. These defects created concrete barriers for Plaintiff, including:

- Product and category images across virtually the entire Website—including the dresses and new-in pages that Plaintiff specifically attempted to navigate—were announced by NVDA with the placeholder text "picture" or a similarly meaningless value, depriving Plaintiff of any description of the garment depicted, its style, color, cut, or distinguishing features. This failure, documented across 1,222 pages of the Website, meant that every product image Plaintiff encountered conveyed no useful information whatsoever.

- HTML form controls on 1,222 pages—including the homepage, every product category page, and the login and checkout pages—had no accessible name. NVDA announced each control only by its type (e.g., "edit" or "button") with no label, making it impossible for Plaintiff to understand what each field required, to filter products by size or color, or to complete any transaction.

- Heading elements on 215 pages, including the new-in-today, dresses, shoes, swimwear, co-ords, coats, and petite category pages that Plaintiff attempted to browse, were empty—containing no text. NVDA announced these as headings with no content, preventing Plaintiff from using heading navigation to understand the structure of any page or to locate product sections.

- Document titles were absent across 1,019 pages, including the homepage and all login redirect category pages. Because screen readers announce the page title upon loading to orient the user, the absence of a title left Plaintiff unable to confirm which page she had navigated to, compounding her inability to orient herself within the Website.

- A CSS animation on the beauty landing page ran continuously for thirty seconds (animation-duration: 30,000ms) with no mechanism to pause, stop, or hide it. Because NVDA's speech output is overridden by page-level animations of this duration, Plaintiff was denied access to any content on that page while the animation was active.

- Lists of navigation items and product listings on 1,222 pages were coded with role=list but did not contain the required role=listitem child elements, causing NVDA to fail to announce the list structure—preventing Plaintiff from understanding how many items a category contained or how to navigate between them.

- On ten product pages—including shop/corset-bodysuits, shop/draped-maxi-skirt, shop/satin-robes, and shop/white-corsets—multiple links shared

identical link text ("App store download") but pointed to different destinations. NVDA read both links identically, giving Plaintiff no means of distinguishing between them or understanding where each would lead.

- On six product pages—including shop/black-corsets, shop/black-lace-strappy-dress, shop/brown-corset, shop/grey-high-waisted-leggings, shop/pink-belted-coat, and shop/white-corset-dresses—links were differentiated from surrounding text exclusively by color, with no non-color cue such as underlining, bolding, or an icon. As a result of Plaintiff's visual disability, she was unable to identify these links as interactive elements.

28.    As a result, Plaintiff could not reliably navigate the product listing pages, evaluate product descriptions and available sizes and colors for the Floral Satin Midi Slip Dress and the Ribbed Asymmetric Bodycon Mini Dress, or select any item for further review or purchase.

29.    Plaintiff also attempted to access additional areas of the Website—including the dresses, new-in, and account-creation pages, as well as the Website's informational and return-policy sections—because these pages contained product listings, interactive filters, and navigation components that Plaintiff needed to browse the site effectively. The SortSite reports documented the same categories of failures—meaningless placeholder alt text, unlabeled form controls, empty headings, absent document titles, and improperly structured lists—across these pages as well. These failures caused NVDA to read interactive elements as "button," "link," or "picture" without any meaningful context, preventing Plaintiff from identifying, comparing, or navigating to products.

30.    On each of the three dates, Plaintiff attempted to evaluate the Floral Satin Midi Slip Dress and the Ribbed Asymmetric Bodycon Mini Dress to determine which item best suited her preferences and to complete a purchase. Because the Website lacked accessible coding, Plaintiff was unable to obtain the same product information available to sighted users and could not complete a purchase.

Systemic Barriers Confirmed by SortSite

31.    Plaintiff's counsel conducted an automated accessibility audit of www.prettylittlething.com using SortSite, a leading automated website testing tool developed by PowerMapper Software Ltd, based in Edinburgh, Scotland (www.powermapper.com/products/sortsite/). SortSite is capable of scanning an entire website in a single operation and evaluating it against over 320 WCAG 2.1 accessibility tests covering Levels A, AA, and AAA; over 290 Section 508 (2017) tests; W3C standards compliance; browser compatibility; SEO; broken links; and security issues. SortSite is not a fringe or niche tool: it is used by over 30% of Fortune 100 companies, by government agencies including NASA, and by global organizations including Disney and UNICEF; it has been deployed in more than 50 countries, has tested over 2 million websites, and has scanned more than 524 million web pages. Since 2019, SortSite has consistently scored the best WCAG coverage in W3C ACT Rules implementation reports and is regularly cited in peer-reviewed academic papers as the gold standard for automated accessibility auditing. Multiple government agencies rely on SortSite as their primary tool for accessibility compliance audits. The audit conducted by Plaintiff's counsel scanned 2,427 pages and files of www.prettylittlething.com—a scan halted partway through, with 1,404 additional

pages left unchecked—and produced an Accessibility Report, a Broken Link Report, and a Site Quality Report, each of which confirmed systemic, sitewide failures.

32.    The SortSite Site Quality Report—which benchmarks www.prettylittlething.com against comparable websites—found that 2,251 pages presented quality issues, placing the Website worse than 59% of comparable sites; that 2,250 pages contained broken links or errors, placing the Website worse than 59% of comparable sites; that 2,250 pages presented W3C standards violations, placing the Website worse than 59% of comparable sites; and that 2,250 pages presented accessibility problems. These findings confirm that the barriers Plaintiff encountered were systemic, widespread, and present throughout the Website at the time of her attempts to access it— and that the audit captured only a fraction of the Website's total pages before the scan was stopped.

33.    The SortSite Accessibility Report identified the following Level A WCAG 2.1 violations—the most severe classification, indicating that "Pages are unusable for some people"—across www.prettylittlething.com:

- Alt text contains placeholder 'picture' (WCAG 2.1 A F30 / Section 508 A F30): On 1,222 pages—including the homepage (Line 3390), all new-in category pages (Line 285), and all login redirect pages (Line 277)—image elements carry the alt attribute value "picture," which functions as a meaningless placeholder. JAWS, NVDA, and VoiceOver all read this value aloud as the accessible name of each image, informing Plaintiff that every product image throughout the Website is called "picture"—conveying no information whatsoever about the garment depicted.

- HTML form control has no accessible name (WCAG 2.1 A F68 / Section 508 A F68): On 1,222 pages—including the homepage (Lines 3347, 18805), all category pages (Line 192), and all login redirect pages (Lines 184, 5395, 5412)—form controls have no accessible name. NVDA reads only the control type (e.g., "edit" or "button") without any label, making it impossible for Plaintiff to understand what information each field requests or to interact meaningfully with the control.

- Document must have a title (WCAG 2.1 A 2.4.2 / Section 508 A 2.4.2): On 1,019 pages—including the homepage (Line 1) and login redirect pages for all major categories—the HTML document title element is absent. Because screen readers announce the page title upon loading, Plaintiff was unable to confirm which page she had navigated to, preventing independent orientation throughout the Website.

- Elements with role=list must contain role=listitem (HTML5 ARIA 1.2 / WCAG 2.1 A 1.3.1 / Section 508 A 1.3.1): On 1,222 pages—including the homepage (Lines 5528, 5627, 5726, 6236) and all category pages (Lines 5181, 5314)—list containers are assigned role=list but contain no elements with role=listitem. Screen readers cannot convey list structure or count, leaving Plaintiff unable to understand how many navigation items or products a category contained.

- Headings should not be empty (WCAG 2.1 A 1.3.1 / Section 508 A 1.3.1): On 215 pages—including the new-in-today (Line 5824), dresses (Line 5844), shoes (Line 5864), swimwear (Line 5820), coats-jackets (Line

5836), co-ords (Line 5832), petite (Line 5824), plus-size (Line 5860), and athleisure (Line 5799) category pages—heading elements appear in the HTML but contain no text content. NVDA announces these as headings with no content, disorienting Plaintiff and preventing heading-based navigation across every product category she attempted to access.

- All fieldset elements should be labeled with legend elements (WCAG 2.1 A H71 / Section 508 A H71): On 31 pages—including the account/track-and-return page (Line 5391), the gift card page (Line 5418), the login page (Line 5389), all login redirect category pages (Line 5389), and the password reset page (Line 5391)—fieldset elements group related form controls without a legend element to identify the group. Screen readers cannot convey the purpose or label of grouped form fields, making account management and checkout functions inaccessible to Plaintiff.

- CSS animations run more than 5 seconds without a way to turn off (WCAG 2.1 A 2.2.2 / Section 508 A 2.2.2): On the beauty landing page, a CSS animation runs continuously for 30,000 milliseconds (Line 6317)—thirty seconds—without any mechanism to pause, stop, or hide it. Because this animation overrides NVDA's speech output for the duration of its run, Plaintiff was entirely unable to access any content on the beauty page while the animation was active.

- The element button must not appear as a descendant of an a element (HTML5 / WCAG 2.1 A 4.1.2 / Section 508 A 4.1.2): On 38 pages— including all login redirect pages (Line 5446), the delivery information page

(Line 5629), the returns page (Line 5407), and product pages including shop/corset-bodysuits (Line 310)—button elements are improperly nested inside anchor elements. This invalid structure causes some screen readers to announce both the link and the button role in succession, confusing Plaintiff as to the nature and destination of the interactive element.

- Several links on a page share the same link text but go to different destinations (WCAG 2.1 A F63 / Section 508 A F63): On 10 product pages—including shop/corset-bodysuits (Lines 2609, 2615), shop/draped-maxi-skirt (Lines 4541, 4547), shop/satin-robes (Lines 3184, 3190), shop/white-corsets (Lines 7415, 7421), and shop/black-corsets (Lines 6522, 6528)—multiple links share the identical text "App store download" while pointing to different destinations. NVDA reads both links identically, giving Plaintiff no means of distinguishing between them.

- Indicating links using only text color change does not work for color-blind users (WCAG 2.1 A F73 / Section 508 A F73): On 6 pages—including shop/black-corsets, shop/black-lace-strappy-dress, shop/brown-corset, shop/grey-high-waisted-leggings, shop/pink-belted-coat, and shop/white-corset-dresses (Line 1781)—links are differentiated from surrounding body text solely by color, with no additional non-color cue such as underlining, bolding, or an adjacent icon. Due to the nature of Plaintiff's visual disability, she was unable to identify these elements as links.

- Links must have an accessible name (WCAG 2.1 A F89 / Section 508 A F89): On 3 pages—including the womens-coats-jackets-aviator-jackets

category (Line 5875), the womens-shoes-wedges category (Line 5869), and the FAQ page (Lines 5520, 5530)—anchor elements contain no text, image, or aria attribute from which a screen reader can derive a name. NVDA reads these links as "link" with no destination or purpose, making them completely unusable for Plaintiff.

- Identify row and column headers in data tables using th elements (WCAG 2.1 A F91 / Section 508 A F91): On the FAQ page (Line 5513), a data table presents information without th elements to identify row or column headers. Screen readers cannot convey the relationship between table headers and data cells, presenting all cells as equivalent and stripping the table of its organizational meaning.

- Element li not allowed as child element in this context (HTML5 / WCAG 2.1 A 1.3.1 / Section 508 A 1.3.1): On 5 pages—including pages/informational/terms-and-conditions (Lines 5740–5752), shop/corset-bodysuits (Lines 1780–1783), shop/draped-maxi-skirt (Lines 1781–1784), shop/satin-robes (Line 1781), and shop/white-corsets (Lines 1781–1784)—list item elements appear outside a proper list container. Screen readers do not announce these as list items, depriving Plaintiff of the list structure that organizes information on those pages.

34.    The SortSite Broken Link Report identified the following Priority 1 issues across www.prettylittlething.com: (i) on 10 product pages—including shop/black-corsets, shop/black-lace-strappy-dress, shop/brown-corset, shop/corset-bodysuits, shop/draped-maxi-skirt, shop/grey-high-waisted-leggings, shop/pink-belted-coat, shop/satin-robes,

shop/white-corset-dresses, and shop/white-corsets—an img element references plt-logo.webp but the server returns the file with a MIME type of application/octet-stream rather than the required image type, causing browsers and screen readers to encounter a broken image reference on each of those product pages; (ii) on 2 pages—the FAQ page and the terms-and-conditions page—href attributes contain only an empty string, rendering links at Lines 6439 (FAQ), 5418, 5611, 6132, 6552, and 7037 (terms-and-conditions) completely non-functional; and (iii) on the homepage and across beauty category pages, anchor links reference the target id="who-is-debenhams," which does not exist anywhere on those pages, causing the links to lead nowhere and leaving Plaintiff without access to the content those links purport to provide.

35.    On each of the three dates, Plaintiff attempted to evaluate the Floral Satin Midi Slip Dress and the Ribbed Asymmetric Bodycon Mini Dress to determine which item best suited her preferences and to complete a purchase for personal use. Because the Website lacked accessible coding, Plaintiff was unable to obtain the same product information available to sighted users and could not complete a purchase.

36.    The SortSite reports confirm that the barriers Plaintiff encountered were not isolated to a single page but were systemic across the Website. Of the 2,427 pages and files scanned—with 1,404 additional pages left unchecked when the scan was stopped—2,250 presented accessibility problems, 2,250 contained broken links or errors, 2,250 presented W3C standards violations, and 2,251 presented quality issues, with the Website ranked worse than 59% of comparable sites across quality, broken-link, accessibility, and standards dimensions. These findings demonstrate that Defendant's Website is not

designed, constructed, maintained, or operated in a manner compatible with screen-reader technology.

### Plaintiff's Concrete Injury and Intent to Return

37.    Plaintiff's injuries are concrete, particularized, and ongoing. Plaintiff attempted to access Defendant's Website for the specific purpose of independently browsing and purchasing women's fashion items—a Floral Satin Midi Slip Dress and a Ribbed Asymmetric Bodycon Mini Dress—from one of the most prominently marketed online fashion retailers in the United States. Her shopping objectives were personal, directly tied to her disability and circumstances, and connected to specific products she identified through recommendations from friends and family who regularly patronize PrettyLittleThing.

38.    Plaintiff remains highly interested in purchasing women's apparel and accessories from Defendant and intends to return to the Website as soon as it is made accessible. Her intent to return is credible because:

- She continues to desire the Floral Satin Midi Slip Dress and the Ribbed Asymmetric Bodycon Mini Dress—the specific products she identified during her access attempts—and has been unable to independently evaluate, compare, or purchase either item due to the Website's inaccessible coding. She has chosen not to attempt to purchase these items through other means because PrettyLittleThing's specific combination of style, selection, and price point—confirmed to her by friends and family who patronize the site—is not replicated elsewhere, and she is entitled under federal law to access this marketplace on equal terms with sighted consumers.

- Defendant's Website offers a broad and continuously updated catalog of women's clothing, shoes, accessories, and beauty products that Plaintiff wishes to independently browse and purchase, and which she has been entirely unable to access due to the pervasive accessibility barriers confirmed by SortSite.

- Plaintiff has no alternative means of independently browsing and purchasing from PrettyLittleThing's catalog without an accessible Website, as she cannot visually browse merchandise in a physical store or evaluate fashion items without assistive technology and the site offers no telephone or otherwise accessible alternative shopping channel.

- Plaintiff intends to use www.prettylittlething.com to research and purchase additional clothing items—including shoes, accessories, and seasonal apparel—from Defendant's extensive catalog once the Website is remediated and she is able to access product descriptions, images, sizes, and interactive controls on equal terms with sighted shoppers.

- She has demonstrated a pattern of repeated access attempts across three separate dates, confirming a genuine and continuing intent to purchase from Defendant's Website.

39.    Defendant's ongoing operation of an inaccessible Website deters Plaintiff from attempting to use it again until it is remediated. Plaintiff's injury is ongoing because Defendant has no policy or plan to ensure accessibility, and the barriers she encountered remain uncorrected.

40.     Defendant's failure to design, construct, maintain, and operate its Website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible Website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All legally blind individuals in the United States who have attempted to access www.prettylittlething.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

42.     Plaintiff also seeks certification of a New York subclass consisting of:

> All legally blind individuals residing in the State of New York who have attempted to access www.prettylittlething.com and were denied equal access to the goods, services, and information offered thereon.

43.     The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its women's apparel and accessories to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have

attempted to access the Website and have been denied equal access due to the systemic accessibility barriers confirmed by the SortSite audits.

44.     Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;

- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;

- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;

- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and

- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

45.     Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screen-reading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite reports.

46.     Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

47.     Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

48.     Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

### FIRST CAUSE OF ACTION
(Violations of the ADA, 42 U.S.C. § 12182 et seq.)

49.     Plaintiff Kelly McLean, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

50.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

51.     Defendant's Website, www.prettylittlething.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be

equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

52.    Defendant has failed to design, construct, maintain, and operate its Website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

53.    Defendant's Website, www.prettylittlething.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

54.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

55.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no

individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

56.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff has been denied full and equal access to Defendant's Website, www.prettylittlething.com, has not been provided services that are provided to nondisabled patrons, and has been provided services that are inferior to those provided to nondisabled persons.

57.    Defendant has failed to take any prompt or equitable steps to remedy the discriminatory conduct, and the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility failures through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

58.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer For Relief below.

**SECOND CAUSE OF ACTION**
(New York State Human Rights Law)
("NYSHRL")

59.    Plaintiff Kelly McLean, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

60.    At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of the Defendant.

61.    Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

62.    Defendant, at all relevant times to this action, owns and operates a place of public accommodation, the subject Website, www.prettylittlething.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

63.    Plaintiff has visited the Website on a number of occasions and has encountered barriers to her access that exist.

64.    Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

65. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

66. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the site known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

67. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

68. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide

Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

69.     Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2), and the discrimination continues to date.

70.     Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

71.     Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) et seq.

72.     Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's Website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered throughout the Website.

74.     A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
(Violation of New York State Civil Rights Law)

("NYCRL")

75.    Plaintiff Kelly McLean, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76.    Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

77.    Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

78.    No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

79.    § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

80.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.prettylittlething.com, is a place of public accommodation

that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

81.    Defendant intentionally and willfully failed to remove the barriers on its Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

82.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against the Plaintiff and the Subclass members.

83.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." Id.

84.    Plaintiff and the Subclass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 et seq.

**FOURTH CAUSE OF ACTION**
(Violations of the New York City Human Rights Law)
("NYCHRL")

85.    Plaintiff Kelly McLean, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

86.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or

provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

87.    Defendant is subject to NYCHRL because it owns and operates the Website, www.prettylittlething.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

88.    Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the goods and services integrated therein completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

89.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 et seq.] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

90.    Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

- constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

- constructed and maintained a Website that is sufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or

- failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

91. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct and these violations are ongoing.

92. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

93. Defendant's actions were intended to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

94. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

95. Plaintiff is also entitled to reasonable attorneys' fees and costs.

96. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
(Declaratory Relief)

97.    Plaintiff Kelly McLean, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

98.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and N.Y.C. Admin. Code § 8-107, et seq., prohibiting discrimination against the blind.

99.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.    A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;

B.    A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.prettylittlething.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;

C. A declaration that Defendant owns, maintains, controls, and/or operates its Website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;

D. An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;

E. An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and

F. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
      May 29, 2026

Respectfully submitted,
JOSEPH & NORINSBERG LLC
By: /s/ Robert L. Schonfeld
Robert L. Schonfeld
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
rschonfeld@employeejustice.com
Attorneys for Plaintiff and the Proposed Class